**UNITED STATES of America, Plaintiff,**

v.

**Merwyn J. ERICKSON et al., Defendants. No. J–68–CR–4.**

United States District Court
E. D. Arkansas,
Jonesboro Division.
June 30, 1969.

W. H. Dillahunty, U. S. Atty., Eastern District of Arkansas, Little Rock, Ark., for plaintiff.

James W. Murphy, Little Rock, Ark., Dale E. Peterson pro se, for defendants.

## MEMORANDUM and ORDER

HENLEY, Chief Judge.

This criminal case is now before the Court on the motion of Dale E. Peterson, one of the defendants, for a modification of the sentence imposed herein on May 23, 1968. In passing upon the motion the Court has considered the entire record in the case, and the memorandum brief of counsel for defendant who, incidentally, is the same attorney who represented defendant and his fellows when they were before the Court last year. The Court considers that a rather full statement of the case is desirable.

In 1957 the defendant, who was then a juvenile, while absent without leave from the Air Force, stole a car and transported it in interstate commerce into the State of Wyoming where he was apprehended. On May 16, 1957, a juvenile delinquency charge was filed against him in federal court in that State, and he entered a plea of guilty. He was sentenced to three years and was confined in the United States Reformatory at Englewood, California, whence he was released in 1959.

Following his release he continued to steal cars. The first count of the indictment in this case charged that from May 1, 1967, to about May 28, 1967, Peterson and five other persons entered into a conspiracy to steal automobiles and transport them in interstate commerce into Arkansas for the purpose of sale. In addition to the conspiracy count, the indictment contained eight additional counts charging substantive violations of the National Motor Vehicle Theft Act, 18 U.S.C.A. § 2312.

The defendant, Peterson, pleaded guilty to the conspiracy count, and the substantive counts were dismissed. At the time of sentence other criminal charges were pending against him; the Court suspended execution of the sentence until May 28, 1968, and directed him to surrender himself on that date to the United States Marshal in Chicago, Illinois, which he presumably did. The Court does not know what disposition was made of the charges against defendant in that State.

In March 1969 the defendant filed a motion to vacate and set aside the old juvenile delinquency conviction in Wyoming alleging that his plea of guilty had been in effect coerced. That motion came on for hearing on May 5, 1969, before District Judge Ewing T. Kerr. It does not appear from the copy of Judge Kerr's order which is before the Court whether defendant was present.

Apparently, Judge Kerr undertook to dispose of the motion on the record available to him. He discovered that the Court Reporter had failed to transcribe his notes of the 1957 proceedings so that the Judge was not able to tell from the record whether the motion had any merit. He thereupon simply vacated the old judgment and sentence, which sentence defendant had served already.

The motion now before the Court is based on the fact that, as stated, Judge Kerr set aside the 1957 judgment in Wyoming. The position of defendant apparently is that when this Court sentenced him in 1968, the Court took the 1957 conviction into consideration, and that in the absence of that conviction defendant would not have received as long a sentence as he did. The prayer of the motion is that the sentence be "modified," but defendant does not say what particular modification he desires.

The power of this Court to deal with defendant's sentence at this time is governed by Rule 35 of the Federal Rules of Criminal Procedure. The time allowed by that Rule for a reduction of sentence has long since expired. Hence, if defendant is to prevail on his motion, it must be on the theory that the sentence imposed on him by this Court was an illegal sentence. That theory cannot be sustained.

Unlike the Court Reporter in Wyoming, the Reporter of this Court prepared and filed a complete transcript of the proceedings on May 23, 1968, when defendant and his co-defendants were sentenced.

From a reading of that transcript it appears that the Court did not attach too much importance to the fact that defendant had been adjudged a juvenile delinquent in 1957, although the Court did give and should have given consideration to the past conduct of the defendant. The transcript reveals the following colloquy between the Court, the defendant, and counsel for the defendant:

"THE COURT: What about his prior criminal record? Does he have any convictions, felony convictions in recent years?

"MR. MURPHY: No, Your Honor; the only conviction on his record is the 1957 Dyer Act conviction in Wyoming; and he was eighteen or nineteen years old at the time and he was in the Army, sixteen years old at the time; and he was in the Army and went AWOL and took the car.

"THE COURT: How much time did you serve in Englewood. Mr. Peterson?

"MR. PETERSON: Three years, Your Honor.

"THE COURT: When were you released? '60?

"MR. PETERSON: 1959.

"THE COURT: '59.

"MR. SHERMAN: There are cases pending in Chicago against him too, Your Honor.

"THE COURT: Lets see; he's entered pleas of guilty there also in what, one case, or how many?

"MR. PETERSON: I think there's five or six, I'm not sure.

"THE COURT: Mr. Peterson, do you have a drinking problem?

"MR. PETERSON: Well, lately I have done quite a bit of drinking.

"THE COURT: You are not drinking today, are you?

"MR. PETERSON: No, sir.

"THE COURT: Or under any form of medication?

"MR. PETERSON: No, sir.

"THE COURT: Is there any statement you wish to make to the Court, Sir?

"MR. PETERSON: No, sir.

"THE COURT: Mr. Murphy, do you wish to make any statement on behalf of the defendant?

"MR. MURPHY: I would like to emphasize, Your Honor, as of this date he has served no time since 1959. Cases are pending, for which he has readily acknowledged his guilt. He's acknowledged his guilt in this case.

"I would like to emphasize also that his father died when he was twelve years old; and that his mother, according to the probation report, feels that he needed psychiatric treatment during his youth and early adulthood. He is married, with two children, ages four and three; separated from his wife, but until he was arrested on this charge he was contributing $40.00 a week to the support of those children.

"Further, the report, probation report will reveal that his wife has refused to let him see the children, and despite that fact he has contributed regularly $40.00 a week for their support since 1966.

"He has a ninth grade education; he falsified his age to get into the U. S. Air Force; he went in at age sixteen; went AWOL and during that AWOL time took a car, for which he was convicted under the Dyer Act. That's the only conviction on his record, Sir.

"THE COURT: Mr. Peterson, the Court was made aware of the fact that for some years you seem to have had some problem about cars that did not belong to you. Even as a juvenile you had some difficulty in this matter and got one sentence, a three year sentence. You continued to have this problem as an adult, but as an adult you seem to have learned to turn your inclination to steal cars to a profit. This last operation seems to have been a well organized conspiracy or ring in which you were a principal participant; may be not the principal participant, but a principal one; and the Court would suspect that for a time at least it rewarded you rather handsomely. Although that's not material at the moment. At any rate, you must learn and must be made to learn to know that you cannot continue to steal cars and transport them interstate with any profit. And the Court's wondering in your case how much sentence, how much time its going to have to mete out to get you to stop. Is there anything the Court can do for you or to you in the way of sentence that would cause you to stop stealing cars beyond the time of course, when you are in prison? What do you think about it?

"MR. PETERSON: I don't know, Your Honor.

"THE COURT: You don't know whether it can or not?

"MR. PETERSON: I know that it could, I mean I could stop. When I had that difficulty in 1965, I got in a little trouble there, I wanted to quit; in other words, the Chicago police wouldn't leave me alone; I went to work; and they took and fired me there, lost my job and then I had no means of support.

"THE COURT: This is a recurring problem. As the Court indicated, in the case of Mr. Gardner, it does not wish to punish you unduly; and in view of the fact that you have yet to face another Court for an auto theft charge or charges in the City of Chicago or in Cook County the Court does not want to mete out a sentence that is too long; accordingly, in your case, as in Mr. Gardner's, it is the judg-

ment of the Court that the defendant, Dale E. Peterson, shall be remanded to the custody of the Attorney General to be by him imprisoned in some institution of the Attorney General's choice for a period of three years."

Before going further, the Court will say that it is to be observed that although defendant had every opportunity to do so, he made no statement whatsoever suggesting that his 1957 conviction was tainted with any violation of due process of law, and he did not in any way dispute his involvement with other stolen cars after his discharge from his initial imprisonment in 1959.

In such circumstances the Court thinks that it is quite probable that defendant would have received a three year sentence even had he not been convicted of juvenile delinquency eleven years before.

The Court will assume, however, for decisional purposes that but for the 1957 conviction defendant would have received a somewhat lighter sentence. In the Court's estimation that assumption in no way impairs the legality or validity of the sentence actually imposed.

■ Even if a sentencing judge made a mistake as to a collateral fact when imposing sentence on a defendant, it would seem clear that such a mistake would not impair the validity of the sentence if, as here, the court had jurisdiction of the offense and of the person of the defendant and if, again as here, the length of the sentence imposed was within statutory limits. One of the purposes of Rule 35 in permitting reduction of a sentence within 120 days after its imposition or within the same period after final appellate review of a conviction, is to provide time for the defendant to bring to the attention of the sentencing judge any mistake that might have been made or any misapprehension under which the judge may have been laboring when imposing sentence. If the length of an otherwise valid sentence

was affected by a factual mistake on the part of the judge, and if the mistake is not rectified within the period provided by Rule 35, the only relief available to the defendant is executive clemency.

■ Actually, in this case the Court made no mistake. Defendant had been convicted in Wyoming in 1957, and that conviction was valid until it was set aside just a little less than a year after this Court's sentence was imposed.

United States ex rel. Olden v. Rundle, E.D.Pa., 279 F.Supp. 153, cited by counsel for defendant, and Bauers v. Yeager, D.C.N.J., 261 F.Supp. 420, 424, cited in Rundle, are not in point here since the situation presented in each of those cases was quite different from the situation here.

In both cases State prisoners received two sentences, the first of which was invalid but the second of which was legal. In each case the prisoner completed service of the invalid sentence, and immediately entered upon the service of the valid sentence, and while serving that sentence succeeded in having the invalid sentence set aside. In that situation the problem arose as to whether and to what extent the prisoner was entitled to credit on the valid sentence for time served on the invalid sentence, and in each case the federal court undertook to deal with that problem.

The situation here is quite different. Defendant was not confined under the 1957 sentence when the 1968 sentence was imposed; as has been shown, service of the 1957 sentence was completed in 1959. To allow credit on a legal sentence for time served on an illegal sentence in the circumstances present here might mean that a person "might have several years of prison time to apply to a sentence for a crime that he has not yet committed or for which he has not yet been prosecuted." Bauers v. Yeager, supra, 261 F.Supp. at 424. That would be an absurdity.

The motion is denied.